OLIVER *v.* DENT, ADMINISTRATOR.

4-7447                                    183 S. W. 2d 302

Opinion delivered November 6, 1944.

*Verne McMillen,* for appellant.

*Joseph R. Brown,* for appellee.

HOLT, J.   September 2, 1941, appellees herein, R. E. Dent *et al.,* executed in writing an instrument addressed to "American Security Company, Little Rock, Arkansas," which, in part, is as follows: "Gentlemen: You are hereby authorized to procure for me a loan of $162,500 dollars ($162,500) bearing interest at 4½ per annum, (to be secured by a mortgage on 3,600 acres of land in Crawford county, Arkansas) . . . For negotiating the loan I agree to pay you a cash commission of two per cent payable when loan is closed. . . . If loan is approved as applied for and I refuse or fail to complete said loan within a reasonable time, then I agree to pay you the above named commission. . . ." The instrument contained no provision for time limitation and was not exclusive as to the company.

April 6, 1943, this instrument, for value, was assigned by the American Security Company to appellant, Hogan Oliver, who was its Arkansas agent at the time.

Shortly after the execution of the above instrument, Mr. Oliver submitted appellees' application to Connecti-

cut General Life Insurance Company for the loan of $162,500, which the company declined to make.

Approximately a year after appellant had advised appellees that the insurance company had declined to make the loan, appellees obtained a loan of $92,000 from the Connecticut General Life Insurance Company, secured by 3,000 acres of the land described in the instrument, *supra*.

Appellant, April 7, 1943, sued appellees for an alleged broker's commission, based upon the above instrument. Appellees denied liability and by agreement, the cause was submitted to the court, sitting as a jury, which resulted in a judgment for appellees. This appeal followed.

At the conclusion of all the testimony, appellant requested certain findings of fact and conclusions of law by the court, which were refused. At the request of appellee, however, the court found: "That on September 2, 1941, the American Security Company, assignor of the contract sued on, entered into a contract with R. E. Dent, as administrator of the estate of G. T. Cazort, R. E. Dent, individually and Vivian Cazort Dent, whereby as agent it assumed to procure a loan in the amount of $162,-500 bearing interest at four and one-half per cent. Contract made no provision as time limitation.

"Pursuant to execution of contract, American Security Company applied to The Connecticut General Life Insurance Company for such loan, through its loan department. After an examination of the properties offered as security, the loan as set out in contract was denied. Major Dent by letter after contacting Mr. Hogan Oliver, in charge of loan department of American Security Company, advised his brother of the loan rejection, suggesting that the Jefferson State Life Office might be interested, or that a sale might be had as suggested by Mr. Oliver. Apparently from the evidence, a considerable lapse of time occurred after the loan rejection and both parties to the contract rather assumed that the negotiations had ended. Mr. Dent stated that he heard nothing

further concerning the loan. Later, Mr. Dent, with the assistance of his attorney, Mr. Joseph R. Brown of Fort Smith, Arkansas, executed a new application in the amount of $92,000 for a loan with the Connecticut General Life Insurance Company and this loan was granted at a higher rate of interest than originally requested in the first application. When this loan was consummated, Mr. Oliver, being the owner of the rights and claims of the American Security Company, if such there were, called upon Mr. Dent and insisted that a commission be paid upon the loan as actually made. Mr. Dent denied liability and thereupon Mr. Oliver instituted the present suit.

"There is nothing in the record to disclose that American Security Company took any active steps or rendered any material assistance in the making of the actual loan. Plaintiff Oliver did contend that he advised Mr. Dent that a loan might be granted if application made."

The court then concluded, as a matter of law, that the instrument sued on, creating the relationship of principal and agent, was not exclusive as to the principal and that so long as Mr. Dent acted in good faith, he was not precluded from securing a loan in person; that by conduct of the parties, the original contract of agency was terminated when the original loan was rejected, and that by lapse of time from the date of the original contract until the procurement of the loan, all parties considered the contract abandoned and at an end; that appellant seeks to recover on the original contract and there being no agreement or modification of the original contract or any understanding as to any commission that might be subsequently due under a supplemental application, the court held, as a matter of law, that appellant had no contract upon which to predicate recovery.

After a review of the testimony, we think it supports the court's findings of fact and that the conclusions of law based thereon are correct.

Here, the broker, under the instrument involved, was authorized to negotiate a loan for a specified sum, $162,-

500. His agency was not exclusive. At the broker's request, appellees made application for the loan with the Connecticut Life Insurance Company. The application was refused, and appellant so notified appellees. Appellant made no further effort to procure the loan, but requested that the land be listed with him for sale. Appellees refused appellant's request for a listing.

Thereafter, in 1942, appellees sold 510 acres of the land described in the instrument or contract, *supra,* for $56,000. Approximately one year later, appellees obtained a loan of $92,000 from the Connecticut General Life Insurance Company, secured by a mortgage on 3,000 acres of the land referred to in the contract, *supra.* We find no evidence that appellant was prevented from procuring the loan of $162,500 by the fault of appellees. We think the court, on substantial testimony, was warranted in finding that appellant did nothing in procuring the loan, had abandoned the contract, and through no fault of appellees had failed to obtain the loan under the terms of the contract, *supra.* These findings were based on appellant's testimony that he had advised appellees the Connecticut General Life Insurance Company had refused to make the loan and requested that the land be listed with him for sale.

Appellant testified that some time after the loan had been turned down, he had requested that the application be resubmitted. However, appellees denied this and the trial court found this issue in favor of appellees.

The rules governing the rights of real estate brokers to recover commissions for the sale of real estate apply with equal force to brokers employed to procure loans on real estate. This court so held in *Biscoe* v. *Deming Investment Company,* 148 Ark. 525, 230 S. W. 592, where it is said: "These rules, of course, are applicable to brokers employed to procure a loan on real estate as well as to brokers who are employed to sell real estate."

In *Murphy* v. *Bradley,* 200 Ark. 208, 138 S. W. 2d 791, 128 A. L. R. 427, this court said: "The general proposition is well established that if property is placed in the hands

of a broker for sale at a certain price, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker. The law will not allow the owner of property sold to reap the fruits of the broker's labor and then deny him his just reward. After stating the general rule to be as above quoted, the annotator (43 A. L. R. 1100) states an exception to the general rule as follows: 'Exception to rule. When the contract between the broker and his principal expressly makes the payment of commissions dependent on the obtaining of a certain price for the property, the broker cannot recover, even though the owner sells at a less price to a person to whom the broker first shows the property unless the broker is prevented from making the sale by the fault of the principal.' A large number of cases are cited by the annotator from many jurisdictions fully sustaining this exception, and no cases are cited to the contrary. See, also, *Johnson* v. *Knowles,* 169 Ark. 1089, 277 S. W. 868.'' Appellant falls within the exception to the general rule.

Finding no error, the judgment is affirmed.