John L. CURETON and Joyce A. Cureton *v.* Charles
FRIERSON III

CA 92-527                                      850 S.W.2d 38

Court of Appeals of Arkansas
Division I
Opinion delivered April 7, 1993

*Chet Dunlap*, for appellant.

*Charles Frierson III*, for appellee.

JOHN MAUZY PITTMAN, Judge. John and Joyce Cureton appeal from an order granting appellee, Charles Frierson III, judgment in the amount of $12,000.00, $2,000.00 of which represented an award of attorney's fees. Appellants attack both aspects of the judgment. We reverse the award of attorney's fees but affirm in all other respects.

Appellants sold a parcel or real property to the City of Cash for use in a sewer improvement project financed by the Farmers' Home Administration (FmHA). Appellee was the city attorney for Cash and also served as the closing attorney who issued a title opinion to FmHA, with copies to appellant John Cureton and the Mayor of Cash. The accompanying letter stated in part, "Please note that [a] release[] will have to be obtained from . . . Farmers' Home Administration . . . before this transaction can be completed." In connection with the sale, appellants made

application to FmHA for a partial release of a first mortgage encumbering the property in question. According to the application, appellants were to pay $10,000.00 to FmHA in exchange for the partial release.

On November 6, 1990, appellants conveyed the two-acre tract to the City of Cash by warranty deed. A check in the amount of $10,000.00 was issued by the District Office of the FmHA to the appellants individually. Appellants were to take the check to the County Office of the FmHA and obtain the partial release. It is undisputed that appellants never paid any amount to FmHA and did not obtain the partial release. Appellee contacted appellants several times regarding these failures. On March 13, 1991, appellee wrote appellants for the last time, stating that unless they obtained the release within ten days:

> 1.  I will have to personally pay to Farmers Home whatever it takes to get them to release the property since I was responsible for closing the transaction and I trusted you with the money, believing that you had it taken care of.
>
> 2.  I will immediately file suit against you to recover what I have to pay Farmers Home plus expenses.

On April 23, 1991, appellee, having failed to secure appellants' performance, paid $10,000.00 to FmHA and obtained the release. This action was filed the next day, with appellee contending that he was entitled to be subrogated to the rights of FmHA. After a trial, the court entered judgment in favor of appellee.

Appellants first contend that the trial court erred in finding appellee subrogated to the rights of FmHA. They contend that appellee, in paying FmHA, was nothing more than a volunteer or intermeddler and, therefore, was not entitled to any rights of subrogation. We cannot agree.

■ Subrogation may be broadly defined as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Black's Law Dictionary* (5th ed. 1979). It is the machinery by which the equities of one man are worked out through the legal rights of another. *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.*, 108 Ark. 555, 158

S.W. 1082 (1913). Subrogation arises when one not primarily bound to pay a debt or remove an encumbrance nevertheless does so, either from his legal obligation, as in the case of a surety, or to protect his own secondary right. *Blackford* v. *Dickey*, 302 Ark. 261, 789 S.W.2d 445 (1990).

Subrogation will not generally be ordered in favor of a mere volunteer or intermeddler. *Id.*; *Baker* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965). Generally speaking, one is a volunteer if, in making payment, he has no right or interest of his own to protect, and acts without obligation, moral or legal. *Blackford* v. *Dickey*, *supra*; *Baker* v. *Leigh*, *supra*. However, the right of subrogation is not necessarily confined to those who are legally bound to make a payment, but extends as well to those persons who pay a debt in self-protection, since they might suffer loss if the obligation is not discharged. *See Baker* v. *Leigh*, *supra*. In 83 C.J.S. *Subrogation* § 25-26 (1953), the text states:

> One who, acting in a representative or fiduciary capacity, incurs and satisfies obligations to the benefit of his principal, is subrogated to the rights of the principal against others primarily liable, and to the rights of the creditor against others primarily liable.
>
> . . . .
>
> Where an agent pays on behalf of his principal, the agent is subrogated to any rights his principal may have to reimbursement from third persons. . . . An agent who is compelled by his mistake or mismanagement of his principal's affairs to pay his principal for a debt or default primarily due by a third person is subrogated to the rights of the principal against that person . . . .

*See Murrell* v. *Henry*, 70 Ark. 161, 66 S.W. 647 (1902).

Here, appellants received instructions from the County Office of the FmHA as to what would be required from them if they were to obtain a release of the property in question. Appellants accepted funds from the City of Cash, through its lender, the District Office of the FmHA. Appellants failed to use the funds as prescribed to obtain the required release. Although appellant Joyce Cureton testified that appellee "jumped in there and filed suit against me," the record establishes that suit was not

filed until five and one-half months after appellant's receipt of the funds. The record also reflects that appellee represented both FmHA and the purchaser of the property sold by appellants. FmHA was making demands on appellee to secure the release, and appellee had contacted appellants regarding the release on several occasions, but to no avail. We think that this constitutes evidence that appellee was acting in a representative or fiduciary capacity when he paid the $10,000.00 necessary to obtain the release. From our review of the record, we cannot conclude that the trial court clearly erred in finding that appellee was not a mere volunteer or in holding that he was entitled to be subrogated to FmHA's rights against appellants. *See Murrell* v. *Henry, supra*; 83 C.J.S. *Subrogation* §§ 25-26. Therefore, we affirm that part of the judgment that represents appellee's entitlement to reimbursement for his payment to FmHA.

Appellants next contend that the trial court erred in awarding appellee a $2,000.00 attorney's fee. Appellants contend that the trial court erred in finding that they raised and presented "no meritorious defense" and, therefore, erred in basing its award of a fee on that finding.

Generally, attorney's fees are not allowed in Arkansas unless expressly authorized by statute. *Transportation Properties, Inc.* v. *Central Glass & Mirror of Northwest Arkansas, Inc.*, 38 Ark. App. 60, 827 S.W.2d 667 (1992); *City of Little Rock* v. *Quinn*, 35 Ark. App. 77, 811 S.W.2d 6 (1991). As noted above, the court awarded the fee on grounds that appellants presented "no meritorious defense." The only statute that we have found authorizing attorney's fees on that particular basis is Ark. Code Ann. § 27-53-402 (Supp. 1991), which deals with small damage claims growing out of motor vehicle accidents. The only statute cited by the parties on the issue of fees, and the one to which the trial court most likely was referring, is Ark. Code Ann. § 16-22-309 (Supp. 1991). That section provides for a fee to the prevailing party in any civil action in which the court finds that there was a *complete absence of a justiciable issue of either fact or law* raised by the losing party or his attorney. In order to find an action or defense to be lacking a justiciable issue:

> the court must find that the action . . . or defense was commenced, used, or continued in bad faith solely for

> purposes of harassing or maliciously injuring another or delaying adjudication without just cause or that the party or the party's attorney knew, or should have known that the action . . . or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

Ark. Code Ann. § 16-22-309(b).

On appeal, the question as to whether there was a complete absence of a justiciable issue is determined *de novo* on the record of the trial court alone. Ark. Code Ann. § 16-22-309(d); *Elliot* v. *Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991); *Bailey* v. *Montgomery*, 31 Ark. App. 1, 786 S.W.2d 594 (1990). We do not reverse the trial court's finding, however, unless it is clearly erroneous. *Ward* v. *Davis*, 298 Ark. 48, 765 S.W.2d 5 (1989). While appellants' defense in this case was unsuccessful, that fact alone does not amount to a complete failure to raise a justiciable issue of law or fact. From our review of this record, we must conclude that the trial court's finding is clearly erroneous, and we reverse that part of the judgment representing the award of a $2,000.00 attorney's fee.

Affirmed in part; reversed in part.

JENNINGS, C.J., and ROBBINS, J., agree.