38

DAN CUMMINGS and BESSIE CUMMINGS *v.* JIM O. BOYLES,
PAUL ROGERS AND METTIE ROGERS

5-4113                                          411 S. W. 2d 665

Opinion delivered February 27, 1967

*Rose, Meek, House, Barron, Nash & Williamson* for
appellant.

*Moses, McClellan, Arnold, Owen & McDermott;* By:
*James R. Rhodes* for appellee.

J. FRED JONES, Justice. This case involves title to
a part of what is known as "Beaver Dam Island" in
the Arkansas River.

The appellants Dan and Bessie Cummings, own section 32 and the S½ of the NW¼; the NE¼ of the SW ¼; the NW¼ of the SW¼ and the NW¼ of the SE¼ of Section 33, Township 4, North, Range 14 West in Pulaski County, Arkansas, and all accretions thereto. They deraign their title through mesne conveyances from the United States Government. Most of the evidence at the trial of this case concerned the lands described in section 33.

All of appellants' land lies south of the main channel of the Arkansas River and the east and west bound-

ary lines of appellants' land in section 33 if extended north, would cross Beaver Dam Island and the Arkansas River. The north boundary line of the S ½ of the NW ¼ of section 33, passes through, or crosses, the south portion, or side, of Beaver Dam Island. The Arkansas River flows from west to east in the area of appellants' land and a part of it crosses the S ½ of the NW ¼ of section 33, on the south side of Beaver Dam Island. Another portion of the river, now constituting the main channel, flows from west to east along the north side of Beaver Dam Island, and that portion of the river on the south side of the island is called a "chute" which is almost dry when the river is at low stage and is never as deep as the main channel of the river.

Appellants claim title to all of Beaver Dam Island within their east and west boundary lines extended north to the main channel of the Arkansas River. They base their claim on the contention that Beaver Dam Island was completely washed away in 1927 and that a sand bar gradually built out into the river north from their property, and that by slow accretion the land now constituting Beaver Dam Island built out north from the main body of their land and slowly crowded the main channel of the river north to its present location. They contend that in about 1957 the river again reached flood stage and that when the water had receded, a "chute" was formed in its present location across their accreted land, and thus the present Beaver Dam Island, if it can correctly be classified as an island, was formed.

Appellants allege, in their complaint, that appellees have wrongfully and without right, gone into possession of a portion of their property under claim of interest, the nature of which is unknown to appellants, and have cut and sold timber therefrom of the value of $1,000.00. Appellants pray treble damages in the amount of $3,000.00 for the timber cut; for possession of the property and for a restraining order against appellees to prevent further trespass.

Appellees answered by general denial and alleged adverse possession for more than seven years as an affirmative defense.

The trial court held that Beaver Dam Island did not form within the boundaries of the property owned by the appellants, either by accretions or avulsion occurring since 1927, and that appellants had proven no adverse possession to any of the lands in dispute, and appellants' complaint was dismissed.

We find that the greater weight of the evidence does not bear out appellants' contention as to the manner in which Beaver Dam Island was formed since 1927, and we find that there was ample evidence to support the chancellor's findings, as far as they went in this case, but on the trial of this case de novo, we go a little further than the chancellor did.

Ark. Stat. Ann. § 10-202 (Repl. 1956) reads as follows:

"All land which has formed or may hereafter form, in the navigable waters of this State, and within the original boundaries of a former owner of land upon such stream, shall belong to and the title thereto shall vest in such former owner, his heirs or assigns, or in whoever may have lawfully succeeded to the right of such former owner therein."

We are of the opinion that this statute applies to the facts in the case at bar, and that the portion of Beaver Dam Island lying north of the north boundary line of appellants' S½ of the NW¼ of section 33 never was an accretion to appellants' original tract.

The ancient U. S. engineer's map on field work done in 1870, (Ex. 2) although not showing section, township and range boundary lines, does clearly show "Beaver Dam Reefe" and an island in the river near

the reef, and we are convinced from this map and the other exhibits, as well as from the testimony adduced at the trial, that this Beaver Dam Island has existed as such, for at least the past ninety-seven years.

Much of the testimony of witnesses at the trial of this case, was directed at the meandering of the main channel of the Arkansas River through, and adjacent to, the land involved in this case. When that portion of the river considered to be the main channel, was on the south side of Beaver Dam Island, the portion of the river remaining on the north side of the island was called a "chute", and when the main channel moved to the north side of the island, the part remaining on the south side was called the "chute." These chutes would carry more water when the river was high and less water when the river was low. The main channel of the river is now located on the north side of Beaver Dam Island, and a "chute" is located on the south side. Apparently the Army engineers are in the process of confining the Arkansas River to its present main channel on the north side of Beaver Dam Island and closing or eliminating the "chute" on the south side of the island.

We find little evidence that accretions have affected the rights of the parties here involved, and we find no actual problem brought about by accretions or avulsions in this case.

By reducing chains to feet in the metes and bounds description in the Circuit Court order of March 10, 1923, referred to in appellants' brief, and marked as "Exhibit 12" in the transcript, we find that only ¼ mile east of appellants' east boundary line, the distance from the southeast corner of section 33 north to the south bank of Beaver Dam Island was 2,762.10 feet, and the distance on to the south bank of the *Arkansas River*, was an additional 785.40 feet. In 1950, by simple calculation from the metes and bounds description in the tax deed to appellees, (Ex. 9), it is found that the distance along

appellants' east boundary line from the south boundary line of section 33 to the south bank of the Arkansas River is 3,196.52 feet, then another 924 feet across the "chute" to the south side of Beaver Dam Island. This description varies from the survey plat appearing as exhibit 6 in the transcript, and would indicate accretions from the island south toward the mainland, rather than from the mainland north toward the island. In the case *Nix* v. *Pfeifer,* 73 Ark. 199, at page 203 this court said:

> "When the formation begins with a bar or an island detached and away from the shore, and by gradual filling in by deposit, or by gradual recession of the water, the space between bar or island and mainland is joined together, it is not an accretion to the mainland in a legal sense, and does not thereby become the property of the owner of the mainland." Citing, *Holman* v. *Hodges,* 112 Ia. 714, s. c. 84 N. W. 950; *Perkins* v. *Adams,* 33 S. W. 778; *Victoria* v. *Schoot,* 29 S. W. 681; *People* v. *Warner,* 74 N. W. 705; *Cooley* v. *Golden,* 23 S. W. 100; *Buse* v. *Russell,* 86 Mo. 211.

So it appears from the preponderance of all the evidence in this case, that there has been little change in the property here involved, either by accretion or avulsion through the years, and we conclude that appellants still own all the land embraced within the description of their deeds, together with whatever accretions that may have occurred within the north, south, east and west boundary lines of their land. That is to say, whatever accretions that may have occurred south from their true north boundary line on Beaver Dam Island and within their east and west boundary lines, together with whatever accretions that may have occurred north from the main body of their land extending into the "chute" toward Beaver Dam Island belong to the appellants.

The record before us is not clear as to where on Beaver Dam Island the appellees cut and removed timber. If appellees cut and removed timber from appellants' above described land, appellants would be entitled to damages for same; the measure of such damages, and the amount thereof to be determined by the chancellor from the evidence presented.

The findings of the chancellor are affirmed, but this cause is remanded for a determination of damages, if any, for any timber cut on the land of appellants, as herein defined, and for entry of a decree not inconsistent with this opinion.

Affirmed and remanded.

HARRIS, C. J., and GEORGE ROSE SMITH, J., concur.

BYRD, J., not participating